UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HB PLUS BANDAMATIC, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-11-00610 |
| | § | |
| MTC SOUTH, INC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Pending before the court is defendant MTC South Inc.'s and James W. Purvis III's motion to dismiss for lack of personal jurisdiction. Dkt. 8. After considering the motion, relevant filings, and applicable law, the court finds that it does not have personal jurisdiction over the defendants. Thus, plaintiffs HB Plus Bandamatic, Inc.'s claims are DISMISSED WITHOUT PREJUDICE.

### I. BACKGROUND

Plaintiff, HB Plus Bandamatic, Inc. ("HB"), a Texas corporation, is seeking damages against MTC South, Inc. ("MTC"), a Florida corporation, and its president James W. Purvis III ("Purvis) (collectively, "Defendants"), a resident of Florida, for the breach of 22 contracts, amounting to $135,357.32. Dkt. 6, Exh. A. HB also seeks damages under the doctrine of quantum meruit and promissory estoppel. *Id*. In response, MTC filed a 12(b)(2) motion to dismiss for lack of personal jurisdiction. Dkt. 2.

HB sells pre-cured rubber tire treading products and other materials ("Materials") throughout the United States and Canada. Dkt. 6, Exh. B. MTC is in the business of recapping, retreading, and repairing tires. Dkt. 2, Exh. A. HB contacted MTC by making a sales call to MTC's Florida office in January 2010, and this contact resulted in an oral agreement under which MTC would purchase

Materials from HB. Dkt. 2 at 2. Since then, MTC has ordered Materials from HB via facsimile, phone, and email. Dkt. 6-2, Exh. B. The Materials are delivered F.O.B. to MTC's factory in Madison, Florida. Dkt. 2, Exh. A. To date, MTC has made 158 purchase orders, which amounts to $756,950.89. Dkt. 6 at 2. From April 2010 to July 2010, the last 22 purchase orders made by MTC were delivered to its factory. Dkt. 2 at 2, Dkt. 6 at 2. MTC accepted most of the Materials, but did not pay $135,357.32 of the amount due because MTC believed the Materials lacked quality. Dkt. 2 at 2, Dkt. 6 at 3. HB filed a lawsuit against MTC in the 61st Judicial District of Harris County, Texas on December 23, 2010. Dkt. 6-1, Exh. A.

On February 21, 2011, MTC removed the case to this court and then filed a motion to dismiss for lack of personal jurisdiction. Dkt 1. HB claims that this court has jurisdiction over MTC and Purvis because of the contacts between the two companies over a period of 2 years, including 158 purchase orders made by MTC for HB Materials (22 of those 158 purchase orders are the subject of this dispute). MTC, on the other hand, claims this court lacks jurisdiction over it and Purvis because its principal place of business and corporate headquarters are in Florida and, other than the plaintiff, MTC does not maintain any other business relations or contacts in Texas. Dkt 2-1, Exh. A. MTC also does not maintain a phone number, address, agent, or bank account in Texas. *Id.* Additionally, MTC has no employees in Texas and it does not direct its advertising to Texas. *Id.* Nor did MTC's employees or president travel to Texas for business purposes. *Id.* Moreover, HB initiated the contact between itself and MTC by traveling to Florida for its initial meeting with MTC, and HB shipped more than one-third of MTC's orders to Madison, Florida, from a warehouse in Miami, Florida. *Id.*

## II. LEGAL STANDARD

In a diversity action, a federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with due process under the U.S. Constitution. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The two-step personal jurisdiction inquiry collapses into one federal due process analysis because the Texas long-arm statute extends to the limits of federal due process. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "To satisfy the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Mullins*, 564 F.3d at 398 (internal quotations omitted).

"Jurisdiction may be general or specific." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008). General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984). *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993). The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001) (citation omitted). The Fifth Circuit imposes a high standard when ruling on general jurisdiction issues. *Johnston*, 523 F.3d at 611 (illustrating the difficulty of proving general jurisdiction).

A forum state may exercise specific jurisdiction over a nonresident defendant "when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997). The court considers whether the defendant has purposefully availed himself or herself of the laws of the forum state and could reasonably anticipate being sued there. *Burger King v. Rudzewicz*, 471 U.S. 462, 481–82, 105 S. Ct. 2174 (1985). A single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted. *Ruston*, 9 F.3d at 419.

### III. ANALYSIS

**A. General Jurisdiction**

The court does not have general jurisdiction over MTC or Purvis because their contacts with Texas are not continuous and systematic. The level of contacts needed to reach the lofty standard of general jurisdiction is "a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc*. 249 F.3d. at 419. In the *Helicopteros* case, the defendant's contacts with Texas were far more extensive than in the instant case. Helicopteros Nacionales de Colombia, S.A.'s ("Helicopteros") contacts with Texas included sending its chief executive officer to Houston to negotiate the contract in question, accepting checks drawn from a Texas bank, purchasing helicopters and equipment from Texas, utilizing training services from a Texas manufacturer, and sending personnel to the manufacturer's facilities in Texas for training. *Id*. at 410-12. The Supreme Court deemed the contacts insufficient to confer general jurisdiction over Helicopteros. *Id*. at 418-419. Contrary to the nonresident defendant in *Helicopteros*, MTC had *no* contacts with Texas other than the purchase orders, subsequent correspondence, and payments it sent to HB.

HB claims that the sheer number of contacts performed by MTC through the 158 purchase orders and the associated correspondence are sufficient to subject MTC to general jurisdiction in Texas. However, numerous Fifth Circuit authorities state that "the number of contacts with the forum state is not, by itself, determinative. What is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state." *Brown v. Flowers Indus., Inc.,* 688 F.2d 328, 333 (5th Cir. Miss. 1982). Thus, the number of contacts does not provide a sufficient basis for this court to assert jurisdiction over MTC.

Both parties cite to *Central Freight Lines v. APA Transport Corp.,* 322 F.3d 376 (5th Cir. 2003), in support of their positions. In *Central Freight Lines*, a New Jersey defendant entered into an agreement with Central Freight Lines, a Texas company, for freight delivery services. *Central Freight Lines*, 322 F.3d at 379. Central Freight Lines ("CFL") and APA Transport Corp. ("APA") began an ongoing relation in September 2000, and the relationship ended a year and a half later. *See id.* at 379. CFL claimed that APA breached the agreement by demanding prices above the negotiated rate, and APA claimed that CFL failed to pay it $430,254 for freight charges. *See id.* In *Central Freight*, the exact number of contacts between CFL and APA was not stated. *See id.* The Fifth Circuit found no general jurisdiction over APA:

> APA has never registered to do business in the state, has never maintained any kind of business office or records in the state, and has never paid franchise taxes in the state. Likewise, even though APA routinely arranges and receives interline shipments to and from Texas and *apparently sends sales people to the state on a regular basis* to develop business, negotiate contracts, and service national accounts, APA has never actually operated any trucks or picked up or delivered any freight in Texas. Even if APA's contacts with the state of Texas have been, in some sense, "continuous and systematic," APA's activities, in toto, are clearly not substantial enough to justify subjecting APA to suit in the Western District of Texas based on a theory of general personal jurisdiction.

*Id*. at 381 (emphasis added).

Just like APA, MTC is also not registered to do business in Texas and does not have offices or records in Texas. Also similar to APA, MTC "routinely arranges and receives . . . shipments . . . from Texas." However, unlike APA, no MTC employees have traveled to Texas for business purposes. Overall, APA's contacts with Texas extended further than MTC's, even to the point of being "in some sense, 'continuous and systematic,'" yet APA's contacts with Texas still fell short of the high standard required to subject it to suit under general jurisdiction in Texas. *Id*. Therefore, in toto, MTC's activities, which are less substantial than APA's, do not justify subjecting MTC to general jurisdiction in the Southern District of Texas.

**B. Specific Jurisdiction**

This court also cannot exercise specific jurisdiction over the Defendents. In the Fifth Circuit, courts analyze the following factors to determine whether specific jurisdiction exists: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atunteros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)) (internal quotation omitted). These requirements "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475-76.

In the instant case, MTC did not actively or "purposefully avail" itself of Texas laws and regulations. HB intially sought out MTC, the Materials were shipped F.O.B. to Madison, Florida, and MTC never sent any employees into Texas. MTC's only contacts with Texas were sending

6

payments and purchase order forms to HB's office in Texas. And because HB sought out MTC in the creation of the original oral agreement, it can be inferred that MTC did not specifically chose to contract with HB because it is from Texas. MTC most likely would have accepted a similar offer from a company located elsewhere. Accordingly, MTC did not actively reach out to any Texas entities, or seek to benefit from the state's resources.

HB cites *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.*, in support of its argument that the court may exercise specific jurisdiction over MTC. 622 F.2d 149 (5th Cir. 1980). In *Southwest Offset*, the Fifth Circuit held it had specific jurisdiction over Hudco Publishing Co., Inc. ("Hudco"), an Alabama publisher, which established a series of contracts with Southwest Offset, Inc. ("Offset"), in Texas to print phone directories. *Id*. at 150. Similar to *Southwest Offset*, MTC established purchase orders with a Texas company (HB) and sent payments to that Texas company. Additionally, similar to MTC, no Hudco employees ever traveled to Texas. However, in *Southwest Offset*, Hudco, the non-resident company, initiated contact with Offset, whereas in the instant case, HB, the Texas company, initiated contact with MTC. Hudco and Southwest's interactions were also extensive, due to the volume of correspondence incurred as prints and proofs were repeatedly mailed between parties. Unlike *Southwest Offset*, the correspondence between HB and MTC was relatively reserved and passive, involving purchase orders that did not require extensive detail or analysis, and MTC exercised no control over HB's response to its purchase orders. Hudco clearly and purposefully directed activity towards this state; MTC did not.

Additionally, HB contends that the long-term relationship between itself and MTC confers specific jurisdiction over MTC. Dkt. 6 at 9 (citing *Lansing Trade Grp., LLC v. 3B Biofuels GmBH & Co.,* 612 F.Supp.2d 813, 822 (S.D. Tex. 2009) (stating that certain types of contacts that are

7

insufficient to confer specific jurisdiction *may* become sufficient when a contract contemplates a long-term relationship between a nonresident defendant and a forum resident)) (emphasis added). MTC argues that no long-term contract existed between itself and HB. The court agrees with MTC. First, *Lansing* merely suggests that the length of a contract could have an impact on the specific jurisdiction analysis without providing any guidance as to what would constitute a "long-term" contract. MTC's business relationship with HB lasted two years at most.[1] In *Stuart v. Spademen,* a dispute over a failed contract involving a patented ski binding, the parties began their relationship in 1975, entered into a patent agreement in 1977, and ended their relationship in 1982. 772 F.2d 1185, 1188 (S.D. Tex. 1985). Even though the parties' relationship lasted a total of seven years, the Fifth Circuit found that parties "did not contemplate a long-term relationship with the kinds of continuing obligations and wide-reaching contacts envisioned by the *Burger King* contract." *Id.* at 1194. In *Burger King*, the U.S. Supreme Court found that a 20 year business relationship between Burger King and its franchise company was a long-term relationship. 471 U.S. at 482. The two year contract in this case was not long-term, and a long-term relationship was not "contemplated" because either party could have ended the relationship at any time. Neither party maintains that the original oral agreement was for a certain amount of time. Third, HB itself maintains that there was not one long-term contract that has been breached, but rather 158 contracts (purchase orders), 22 of which were allegedly breached, each representing a distinct contract with MTC. Thus each purchase order is a contract in itself and the life span of each contract is better described as short-term, not long-term. Therefore, HB's argument that there was a long-term contractual relationship, or that

---

[1] HB contends that negotiations between itself and MTC started in October 2008. Dkt 6-2 at 2. However, the trip taken by HB's representative to MTC in Madison, Florida, during which the oral agreement was made, occurred in January 2010. Dkt 2-1 at 2. The unpaid invoices dispute arose during the period of April 2010 to July 2010. Dkt 6-2 at 2.

a long-term contractual relationship was contemplated between itself and MTC, thereby conferring specific jurisdiction, is not persuasive.

Place of performance and place of contracting are also important factors to consider in subjecting a defendant to specific jurisdiction. *Jones v. Petty-Ray Geophysical, Geosource, Inc*., 954 F.2d 1061, 1069. It is undisputed that the original oral agreement arose in Florida, not Texas. However, MTC and HB differ in their opinion about where the contract was principally performed. The case of *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986), offers some insight. In *Holt Oil & Gas*, the non-resident defendant's contacts with Texas were (1) entering into a contract with a Texas corporation; (2) sending a final revised joint agreement from Oklahoma to Texas; (3) sending three checks from Oklahoma to Texas in partial performance of the contractual obligations; and (4) engaging in extensive telephonic and written communications with the Texas corporation. *Id*. at 777-778. The court in *Holt Oil & Gas* found it significant that the material performance of the contract—as opposed to the transfer of funds—was centered in Oklahoma, not Texas. *Id*. at 778. The communications between Texas and Oklahoma and the payment of checks to Texas, standing alone, were insufficient to demonstrate that the defendant purposefully availed himself of the benefit and protections of Texas law. *Id*.; s*ee also Freudenspring v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (establishing that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction).

Like *Holt Oil & Gas*, the performance of the contract or contracts between HB & MTC were centered around a state other than Texas. HB initially traveled to Florida with the purpose of soliciting business. MTC sent purchase orders into Texas, to HB, exercising minimal interaction or control. The agreements stipulate that the Materials be sent F.O.B. to Madison, Florida, so HB

retained title and risk of loss for the Materials until they reached Florida[2]. Additionally, one-third of the Materials were shipped to MTC from a Miami, Florida warehouse rather than from Texas. Thus, while the court cannot conclude that performance took place entirely within a different state, a significant portion of the performance occurred outside of Texas, and the oral agreement was entered into in Florida at the initiation of HB. And while the contacts from MTC to HB were relatively more frequent than the contacts between Holt Oil & Gas and Texas, the place of performance of the contract or contracts supports the court's conclusion that the exercise of specific jurisdiction over MTC is inappropriate in this case. There is simply no indiction that MTC purposefully availed itself of the benefits and protection of Texas laws. This court thus cannot exercise specific jurisdiction over MTC. Therefore, this case is DISMISSED WITHOUT PREJUDICE.

---

[2]*Dynegy Midstream Servs. v. Apache Corp.,* 294 S.W.3d 164, 168 (Texas, 2009), a breach of contract case involving the sale of gas, defined F.O.B. by stating: "the Uniform Commercial Code recognizes that when parties specify 'F.O.B. the place of destination,' the risk of loss during transport is on the seller." While this fact supports the court's conclusion that it does not have personal jurisdiction over the non-resident defendant, the court does not base its conclusion solely on the fact that Materials were sent F.O.B. to Madison, Florida. This is in accordance with the precedent set in *Luv n' Care, Ltd. v. Insta-Mix, Inc.,* in which a manufacturer of baby bottles attempted to avoid jurisdiction by manipulating the location of their title transfer. 438 F.3d 465, 468 (5th Cir. 2006). The Fifth Circuit held that "the F.O.B. term by itself [does] not prevent the exercise of jurisdiction where other factors suggest that jurisdiction is proper." *Id*. at 468, 471-472.

### III. CONCLUSION

Considering the law and evidence presented, this case is DISMISSED WITHOUT PREJUDICE due to a lack of personal jurisdiction over the Defendants.

It is so ORDERED.

Signed at Houston, Texas on July 7, 2011.

_____
Gray H. Miller
United States District Judge